UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No. 4:25-CR-40042-MRG |
| NICHOLAS TESTAGROSSA, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The government respectfully submits this Sentencing Memorandum in support of its sentencing recommendation for the defendant, Nicholas Testagrossa. During his employment with the United States Post Office, Testagrossa placed, and repositioned, a hidden camera in the women's restroom of his workplace. When caught, he attempted to destroy the evidence. In doing so, he violated not only the trust placed in him by his employer, but the trust of his work friends, whom he had known for many years. For the reasons discussed herein, a sentence of one year in federal prison appropriately addresses the seriousness of his offenses and the need for deterrence and punishment.

I. **FACTUAL BACKGROUND**[1]

On Friday, March 28, 2025, a United States Postal Employee at the U.S Post Office in Westminster, Massachusetts noticed a few small rocks under the heating vent while she was using the toilet. Thinking that odd, she reached out with her foot to sweep the rocks aside. She then saw a black box that resembled a camera.

She reported it to Postmaster David Ochap to show him what she had found. Postmaster Ochap photographed the device, and he then reported it to postal law enforcement authorities. After

---

[1] The facts, unless otherwise stated, are taken from the uncontested statement of offense conduct set forth in the final Presentence Investigations Report ("PSR").

notifying his chain of command, Ochap stored the device in the drawer of his desk. Importantly, Ochap stored the memory card from the camera/battery pack in a separate location.

Testagrossa returned to the Westminster Post office at some point later that afternoon after completing his mail delivery route and learned that his hidden camera in the women's bathroom had been discovered while he was out. While attending to customers a short time later, Ochap observed Testagrossa enter Ochap's office, purportedly looking for a marker. The office was out of Ochaps' line of sight but close enough that Ochap could hear a metal cabinet open and close and then his desk drawer open and close.

Thereafter, Testagrossa left the building and started his car. Testagrossa then returned to the building. When Ochap checked his desk, the camera/battery pack was missing. When asked, Testagrossa denied taking anything from Ochap's desk drawer. Instead, Testagrossa insisted that he was only in Ochap's office to locate a marker.

Ochap later called Testagrossa and asked Testagrossa if there anything he wanted to tell Ochap? Testagrossa responded that he had no idea what was going on, and that he was with his daughter at that point in the day. Ochap asked Testagrossa if he would like to speak with Ochap when his daughter was not around, and Testagrossa said yes.

Later that evening, Testagrossa called Ochap. During their conversation, Ochap asked if Testagrossa planned to stick with his earlier version of events, and if Testagrossa had, in fact, gone in Ochap's desk. Testagrossa again denied going into the desk. Ochap stated that he would have to continue his investigation, adding that if an item reappeared by Monday, then he would approach it differently.

On Monday, March 31, 2025, Ochap reported to work and, at approximately 5:15 a.m.  He checked his desk drawer and found the camera/battery pack, though the camera's memory card and USB ports were melted.  See the photograph below:



Ochap later told agents that the camera's memory card and USB ports were not damaged when he initially examined it and secured it in his desk on Friday, March 28, 2025.

The case agent reviewed the video footage captured on the memory card and found that there were seven files recovered that were of recordings made in the women's bathroom, starting on February 28, 2025, and ending on March 28, 2025, the day Testagrossa was caught.  And, on the same memory card, there are multiple additional instances of Testagroass recording himself placing the camera in the bathroom.  He also recorded himself (fully clothed) sitting on the toilet in the women's bathroom, attempting to gain his desired vantage point for recording.  In addition, he is recorded practicing with the recording device in the basement of his home.  His face is visible several times.

## II. ADVISORY SENTENCING GUIDELINES

The government agrees with the guideline calculation provided by the U.S. Probation Office in the PSR that the total offense level is 11.  Based on a total offense level of 11 and a criminal history category of I, Testagrossa's guideline imprisonment range is 8-14 months.

### SENTENCING FACTORS

### A. Nature of the Offense

Testagrossa betrayed his friends and his coworkers.  Presumably, he wanted to film his female co-workers undressed for his own sexual gratification.  In doing so, he invaded their privacy and violated their dignity.  This was not an accident.  It was highly planned.  Along the way, he never abandoned his plan.  Instead, he sought to adjust the camera to improve his desired outcome.  When caught, he lied and tried to destroy the evidence.  His criminal conduct here is reprehensible.

The nature of his crimes, both in type and extent, therefore, are very serious.

### B. Characteristics of the Defendant and the Need for Deterrence

In mitigation, the defendant points to his military service and he claims that because he suffers from post-traumatic stress disorder, that fact impacted his decision making. The government acknowledges and appreciates Testagrossa's service to his nation.  The government agrees that his service record and his medical conditions are appropriate for consideration in determining the sentence warranted for his criminal conduct under 18 U.S.C. § 3553(a).

After reviewing carefully Testagrossa's sentencing memorandum and his attachments to the same, the government remains certain that this type of criminal conduct cannot go unanswered. Unlike many, Testagrossa had access to any number of services to assist him by virtue of his military service.  In addition, he describes a wonderful family and colleagues, all of whom would have helped him if asked and all of whom have now been forever changed by his betrayal of their

trust.  It cannot be enough to say sorry when caught when his first instinct was to lie and destroy evidence.  It cannot be enough to simply say you are sorry when there were so many missed off ramps to his criminal conduct.  It cannot be enough to just say sorry when he had so many opportunities to walk away from this criminal conduct before he was caught.

## CONCLUSION

For all the foregoing reasons, and in light of the advisory guidelines, the factors enumerated in 18 U.S.C. § 3553(a), and the reasons to be offered at sentencing, the government respectfully recommends that the Court impose a sentence of 12 months' imprisonment followed by 3 years of supervised release.

Respectfully submitted,

LEAH B. FOLEY
UNITED STATES ATTORNEY

By:   */s/ Danial E. Bennett*
Danial E. Bennett
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Danial E. Benntt
Danial E. Bennett
Assistant U.S. Attorney

Date: May 5, 2026

5